1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW JOSEPH SEDILLO,          )
                                )
          Petitioner,           )          No. C 06-7863 CRB (PR)
                                )
     vs.                        )          **ORDER DENYING**
                                )          **PETITION FOR A WRIT OF**
RICHARD SUBIA, Acting Warden,   )          **HABEAS CORPUS**
                                )
          Respondent.           )
_____ )

          Petitioner, a state prisoner incarcerated at Mule Creek State Prison, seeks a

writ of habeas corpus under 28 U.S.C. § 2254 claiming an improper joinder

resulted in a violation of his due process rights.

                         **STATEMENT OF THE CASE**

          A jury in the Superior Court of the State of California in and for the County

of San Mateo found Petitioner and his co-defendant, Joseph Gilbert, guilty of

attempted premeditated murder, car jacking, kidnaping in the commission of a car

jacking, second degree robbery, assault with a semiautomatic firearm, and first

degree burglary.  Both Petitioner's and Gilbert's sentences were also subject to a

number of arming enhancements and, because they had committed the offenses

for the benefit of a criminal street gang, an enhancement under the California

Street Terrorism Enforcement and Prevention (STEP) Act.  Gilbert was further

charged with personally inflicting substantial bodily injury.  On December 16,

2002, the trial court sentenced Petitioner to 37 years to life and Gilbert to an

aggregate term of 40 years to life.

On July 18, 2005, the California Court of Appeal affirmed the judgment of the trial court with regard to the Petitioner and Gilbert. On October 12, 2005, the Supreme Court of California denied review.

On December 22, 2006, Petitioner filed this instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. Per an order filed on March 27, 2007, the Court found that the petition, when liberally construed, stated a cognizable claim under § 2254 and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer on May 22, 2007. Petitioner filed a traverse on June 7, 2007.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

The victim, Edwin Pineda, was affiliated with a branch of the Nortenos gang. On August 15, 2001, Pineda was going to meet Gilbert to sell him two ounces of cocaine for $1,000. Upon reaching the agreed-upon meeting place near the Cow Palace, Pineda was approached by Gilbert and a woman. After the pair entered Pineda's truck, Pineda passed over the cocaine; Gilbert tossed a single $20 bill at Pineda. When Pineda protested, Gilbert put a gun against Pineda's back and ordered him to drive.

At Gilbert's direction, Pineda drove to a motel in Daly City and parked. Sedillo then entered Pineda's truck, carrying a roll of duct tape. Sedillo told Pineda: "[Y]ou fucked up, you know, you been messing with the Surenos. [¶] . . . .[¶] And . . . he said it was a call from the pen." The latter comment Pineda took to mean that "somebody . . . at the higher level" ordered him killed. Sedillo then told Pineda to hand over the ignition keys. Pineda moved to do so, but he hit Sedillo and fled. As Pineda ran, Gilbert began shooting. By the time Pineda staggered into a nearby restaurant, he had been shot in the back, chest, and both legs.

Later that day, police apprehended Gilbert outside Pineda's apartment and found him in possession of a .45 semi-automatic handgun. Forensic examination showed that five of the six expended bullets recovered from the scene and from Pineda were fired from this weapon. Sedillo's fingerprint was recovered from the gun's magazine. Gunshot residue was found on Gilbert's hands. Also found on Gilbert were items of jewelry belonging to Pineda, and Gilbert was wearing Pineda's jacket. A man resembling Sedillo was initially seen with Gilbert, but he managed to elude capture. On August 17, police recovered some wadded-up duct tape when they examined Pineda's vehicle (which was in South San Francisco). Sedillo's fingerprint was on the tape. [Sedillo was arrested several days later in Las Vegas.]

2

While Sedillo was in the county jail, correctional officers discovered a note hidden under a desk in the cell previously occupied by Sedillo. As interpreted by gang expert Officer Andaluz, the note read: "Greetings my fellow N[orteno]'s. This is Tiny from San Fran Mission [a Norteno subgang]. At the moment I am channel in San Mateo Co[unty] Jail. My name is Andrew Sedillo # 1085607. I am on a 664/187. I been on the line [incarcerated] for 6 months. The homeboy Joker from ESDC [a Norteno subgang in Daly City] gave me the llaves [Spanish for keys, as in the keys to control . . . the area] where I'm at. I got involved in a situation where false [rumors] and gossip was spread in my hood also in 850 Bryant. 1) Was spread out that I am talking [informing] on a fellow N or N's. 2) Was that I hit a fellow N. (664/187) I got myself cleared by showing all fellow N's my paper work. It was all a misunderstanding. This N that is delivering the kite [this note] also knows all info about my case sir. The other misunderstanding was that the man that got shot was not a fellow N. He came from El Salvador and tried to establish a line for himself [not sharing profits], in my eyes he was just out on 24th [Street] to make a dollar. He has Sur 13 MS on the left leg. The way [our neighborhood] is running is the reason was he walked around freely an[d] openly. But at the moment he is talking on me and other fellow N's. such as Pete out of SFM. I ask that all the false [rumors] and gossip is tak[en] care of before I come across a good homeboy that wants to handle his dut[ies] and don't have the proper info. I don't want to hurt no fellow N. Also I have to[o] much to deal with at the moment. So I hope to see you homeboys soon and send my love and respect to all N's." Officer Andaluz already knew Sedillo was a member of the Nortenos.

People v. Sedillo, No. A104945, 2005 WL 1663522, at *1-2 (Cal. Ct. App. July 18, 2005) (footnotes omitted).

## DISCUSSION

A.   Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

3

unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).   While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

///

4

B.   Claims and Analysis

Petitioner claims that the trial court's denial of his motion to sever – an objection to the consolidation of the cases – violated his due process right to a fair trial.  He argues that the court impermissibly favored judicial economy over his fundamental rights and that this violation of due process had a substantial effect on the jury's verdict by coloring the weak evidence against him with the stronger evidence against his co-defendant.

To obtain federal habeas relief for improper joinder, Petitioner must show that the state court's denial of the severance motion was an error that "actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process."  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) (citation omitted).  In addition, Petitioner must show that the erroneous failure to sever had a substantial and injurious effect or influence on determining the jury's verdict.  See id. (citing Brecht v. Abrahmson, 507 U.S. 619, 637 (1993)).

There is a judicial preference for joint trials due to efficiency and the desire to avoid "the scandal and inequity of inconsistent verdicts."  Zafiro v. United States, 506 U.S. 534, 537 (1993).  When a trial involves two or more co-defendants, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  Id. at 540.  However, a denial of severance of co-defendants may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process.  See Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997); Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir. 1986).  The court can mitigate such a risk through proper jury instructions.  Zafiro, 506 U.S. at 539.  A judge should grant a severance only if there is a "serious risk that a joint trial would compromise a specific right of one of the defendants or prevent a jury from making a reliable judgment about guilt

5

or innocence.  Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant."  Id. 539.

Improper joinder can result in a due process violation because there is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."  United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986).  This risk is especially great when the prosecutor encourages the jury to consider the two sets of charges in concert, e.g., as reflecting a modus operandi even though the evidence is not cross-admissible, and when the evidence of one crime is substantially weaker than the evidence of the other crime.  See Bean v. Calderon, 163 F.3d 1073, 1084-85 (9th Cir. 1998).  But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross-admissible) and the jury is properly instructed so that it may compartmentalize the evidence.  Id. at 1085-86

The California Court of Appeal issued a reasoned opinion rejecting Petitioner's claim of improper joinder.  The court's opinion highlighted the fact that the charges against both co-defendants arose from one common event and that the evidence against both of them was very strong.  The court also noted that the jury was specifically instructed on how to weigh the individual pieces of evidence.  In substantial part, the court stated:

> "A 'classic' case for joint trial is presented when defendants are charged with common crimes involving common events and victims." (People v. Keenan, (1988) 46 Cal.3d 478, 499-500.)  The trial court's ruling may be overturned only for abuse of discretion.  (E.g., People v. Koontz, (2002) 27 Cal.4th 1041, 1074-1075.)
>
> This was a textbook case for consolidation.  The evidence against each defendant was very strong.  Gilbert arranged the meeting with Pineda and directed him to the location where Sedillo was waiting.  There is nothing to suggest the meeting of Sedillo, Pineda, and Gilbert was

6

coincidental; on the contrary, it appears that Sedillo and Gilbert coordinated beforehand that they would confront Pineda once Gilbert had brought Pineda to where Sedillo was waiting. Sedillo's fingerprint was found on the gun's magazine (as well as the duct tape he brought), but gunshot residue was found on Gilbert. Sedillo brought the gun, and used it to threaten Pineda, but it was Gilbert who fired it and kept it afterwards. In addition to the gun, items of Pineda's personal property were found on Gilbert when he was arrested.

It is true, as Gilbert maintains, that the direct evidence of gang involvement was stronger against Sedillo, who wrote the jailhouse letter. It was Sedillo who first aimed the gun at Pineda and told him he had "fucked up" by "messing with the Surenos." However, the jury was instructed to consider the letter only against Sedillo, not Gilbert, and there is nothing to overcome the presumption that the jury followed this admonition. (E.g., People v. Cunningham, (2001) 25 Cal.4th 926, 1014; People v. Davenport, (1995) 11 Cal.4th 1171, 1210.)

Sedillo claims the evidence against him was weak, "wholly circumstantial," and therefore "it is likely the jury used the very strong evidence tying Gilbert to the crimes to shore up the weaknesses" in the prosecution's case against him (Sedillo). Both points are incorrect. While much of the evidence against Sedillo was circumstantial, Pineda's testimony was evidence that was both direct and uncontradicted. Far from being weak, the case against Sedillo was formidable. The conclusion is inescapable that Sedillo and Gilbert were clearly confederates united for the common purpose of murdering Pineda. Assuming that cross-admissibility is still required (see § 954.1; Frank v. Superior Court, (1989) 48 Cal.3d 632, 641 ["cross-admissibility is not the sine qua non of joint trials"] ), it was more than satisfied here – it is inconceivable that a separate trial of either Sedillo or Gilbert would have avoided the considerable evidence of the other's involvement in the charged offenses. The prosecution did not allege inflammatory charges against one defendant but not the other. Moreover, as already shown, the evidence against each and both defendants was strong, so there was no danger of compensatory spillover to salvage a weaker case. (Frank v. Superior Court, supra, at pp. 638-639; accord, e.g., (1996) 13 Cal.4th 92, 126-127; People v. Davis, (1995) 10 Cal.4th 463, 507-508; People v. Sandoval, (1992) 4 Cal.4th 155, 172-173.)

Sedillo, 2005 WL 1663522, at *2-3.

The California Court of Appeal's rejection of Petitioner's severance claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254. The record makes clear that the evidence against both Gilbert and Petitioner was strong. As to Petitioner, it included his fingerprints on the gun magazine and the duct-tape, and his subsequent "kite" describing his actions to fellow gang members. See Zafiro,

7

506 U.S. at 536-40 (joinder proper even when four co-defendants presented "mutually antagonistic" defenses because evidence against each individual defendant was substantial); cf. Bean, 163 F.3d at 1083 (trial fundamentally unfair when criminal charges supported by weaker evidence joined to case with stronger evidence). As the California Court of Appeal points out, while "much of the evidence against Sedillo was circumstantial," the evidence from the victim was uncontradicted and clear, identifying Petitioner as one of the two assailants. Sedillo, 2005 WL 1663522, at *3. Even supposing the evidence against Gilbert was stronger than that against Petitioner, the cautionary instructions given to the jury served to cure any potential spillover from one case to the other, thus ensuring a fair trial. See Zafiro, 506 U.S. at 540-41 (sufficient jury instructions can "cure any possibility of prejudice"). It simply cannot be said that the California Court of Appeal unreasonably affirmed the joinder and rejected Petitioner's claim that his trial was rendered fundamentally unfair. See 28 U.S.C. § 2254(d).

## CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of the Respondent and close the file.

**IT IS SO ORDERED.**

Dated: March 20, 2008

CHARLES R. BREYER
United States District Judge

G:\CRBALL\2006\7863\Sedillo1.denial.order3.wpd